UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN B. PHILLIPS, *et al.*,<br>    *Plaintiffs*, | )<br>)<br>) | |
| *vs.* | )<br>) | 1:06-cv-1544-WTL-JMS |
| INDIANAPOLIS LIFE INSURANCE COMPANY<br>and DAVID CLINE<br>    *Defendants*. | )<br>)<br>)<br>) | |

### **ORDER**

Presently before the Court is Defendant Indianapolis Life Insurance Company's ("ILIC") Motion to Compel Discovery—Price Depositions (the "Motion to Compel"). [Dkt. No. 296.]

#### **BACKGROUND**

While the factual claims in this case can be complicated, those relevant to the Motion to Compel are easily summarized. Plaintiffs bought life insurance policies from Defendants that they claim were touted as having favorable federal income tax benefits. The Internal Revenue Service subsequently issued guidance calling into question the tax benefits that Plaintiffs thought that they were going to receive. Dr. and Mrs. Phillips entered into a voluntary agreement with the IRS, under which they paid additional taxes, interests, and penalties. Because of their belief that the insurancewas not providing the tax benefits for the Phillips, they stopped paying the premiums. That, according to Defendants, exacerbated the Phillips' claimed damages because the premiums could not be invested to provide the promised life insurance benefits to them.

Dr. and Mrs. White were audited, assessed taxes, penalties, and interest. The Whites are contesting the IRS' determination in a U.S. Tax Court proceeding that will take place in July, including the determination that the policies do not have tax benefits that Plaintiffs understood them to have.

Plaintiffs have sued Defendants, claiming they were fraudulently duped into buying the insurance policies, and seek to recover their premiums as well as the taxes, penalties, and interest that they had to pay.

Through the Motion to Compel, Defendants seek to depose two of Plaintiffs' lawyers, David Price and Adria Price. The Prices provided tax advice to the Plaintiffs for their dealings with the IRS and also represent the Whites in their pending tax litigation. Ms. Price has a longstanding appearance on file in this case. Defendants want to depose the Prices to ask about the efforts that Plaintiffs took to minimize the adverse tax consequences with the IRS, why the Phillips stopped paying on the policy, and the apparent inconsistency between the Whites' position in the tax court litigation and their position in this case regarding the proper tax treatment for the policies.

## ANALYSIS

### A.  Scope of Discovery Generally

The Federal Rules of Civil Procedure permit liberal discovery to make "trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). Thus, parties may discover "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. Pro. 26(b)(1). The courts construe relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to any other matter that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quotation and citation omitted). So long as the proposed discovery "appears reasonably calculated to lead to the discovery of admissible evidence," discovery is proper, even though the information sought itself may not be admissible at trial. Fed. R. Civ. Pro. 26(b)(1).

Yet discovery does have limits. The Court must, *sua sponte* if necessary, prevent discovery whenever it, among other things, "can be obtained from some other source that is more convenient, less burdensome, or less expensive" or the burden of obtaining the information "outweighs its likely benefit." Fed. R. Civ. Pro. 26(b)(2)(C). Thus, when presented with a motion to compel, the Court "should independently determine the proper course of discovery based upon the arguments of the parties," fashioning "a ruling appropriate for the circumstances of the case." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996) (citations omitted).

### B. An Overview of the Attorney-Client Privilege and Work-Product Immunity

Because Defendants seek to take depositions of Plaintiffs' counsel, Defendants' Motion to Compel naturally implicates the attorney-client privilege and work-product immunity. The former "protects confidential communications made by a client to his lawyer where legal advice [was] sought from a professional legal advisor in his capacity as such." *Long v. Anderson Univ.*, 204 F.R.D. 129, 134 (S.D. Ind. 2001) (citations omitted).[1] The latter protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," including the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative." Fed. R. Civ. Pro. 26(b)(3)(A), (B).

The attorney-client privilege and work-product immunity share three important features. **First**, determining whether either applies to a particular document or communication requires an item-by-item analysis. *See United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) ("The claim of privilege cannot be a blanket claim; it must be made and sustained on a question-by-question or document-by-document basis."); *Taroli v. Gen. Elec. Co.*, 114 F.R.D. 97, 99 (N.D.

---

[1] Under Federal Rule of Evidence 501, federal common law governs the attorney-client privilege vis-à-vis all federal claims in the case, while state privilege law will govern privilege for all state-law claims. For present purposes, any differences between the two are immaterial.

Ind. 1987) (same, with respect to work-product immunity).  **Second**, both can be waived.  *See In re Special Sept. 1978 Grand Jury (II)*, 640 F.2d 49, 52 (7th Cir. 1980).  But, unlike the attorney-client privilege that is owned completely by the client, the work-product privilege is jointly owned between the client and the lawyer, and can thus be asserted by either.  *Id.*  Because the work-product immunity exists, in part, to provide lawyers with a "protected zone" in which to prepare their cases, *see Hickman v. Taylor*, 329 U.S. 495, 512 (1947), lawyers must consent before the immunity over their "opinion" work product is waived.  *See In re Special Sept. 1978 Grand Jury (II)*, 640 F.2d at 52.  **Finally**, neither work-product immunity nor the attorney-client privilege protects underlying facts.  *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) ("The protection of the privilege extends only to communications and not to facts….The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated…[it] into a communication to his attorney." (internal quotation, citation, and emphasis omitted)).

### C.  The Rule in *Shelton's* Case[2]

The Prices argue that the Court should deny the Motion to Compel out of hand because Defendants have not met the special showing that the Eighth Circuit requires before one party can depose the other party's counsel.  *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1326 (8th Cir. 1986).  That case, if applied here, would require Defendants to establish three things to prevail on their Motion to Compel:  that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."  *Shelton*, 805 F.2d at 1326 (citation

---

[2]  Thankfully, it has nothing to do with life estates and remaindermen, as the Rule in *Shelley*'s Case does.

omitted). The Eighth Circuit adopted that rule because it was concerned with the "increasing practice" of taking opposing counsel's depositions—a practice that chills attorney-client communications, permits one party to try and freeload on the other party's case development activities, and encourages satellite litigation about privilege issues. *See id.* at 1327.

The Seventh Circuit has never addressed *Shelton's* propriety. The only decision from this District to have done so, *Cook Inc. v. C.R. Bard, Inc.,* 2003 WL 23009047 (S.D. Ind. 2003) (Barker, J.), rejected it. According to that case, counsel in this District seldom try to depose opposing counsel; therefore, this District does not need the *Shelton* rule. *Id.* at *1. Instead, it cautioned counsel to "think carefully before noticing such a deposition" because sanctions would be readily employed "if, in retrospect, it is apparent that the deponent had so little relevant, non-privileged information that the deposition was no more than a waste of everyone's time." *Id.* at *2.

The Court likewise rejects *Shelton*. The Federal Rules have the force of statute. *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.*, 313 F.3d 385, 392 (7th Cir. 2002). Like any statute, the Court must "give the Federal Rules of Civil Procedure their plain meaning." *Pavelic & LeFlore v. Marvel Entertain. Group*, 493 U.S. 120, 123 (1989) (citation omitted). *Shelton*'s heightened burden-of-proof rule finds no support in the plain text of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. Pro. 30(a)(1) (permitting a party to "depose **any person**" by issuing a notice of deposition and, if necessary, a subpoena (emphasis added)). And, in any event, this magistrate agrees with *Cook* that the *Shelton* rule is unnecessary given the rarity of attorney depositions in this District and given the Court's ability to sanction counsel for proceeding with a frivolous deposition, *see* Fed. R. Civ. Pro. 26(g)(1)(B)(i), (iii). Thus, the

Court will consider the present motion's merits just as it would any other run-of-the-mill motion to compel a deposition.

### D. The Motion to Compel

#### 1. The Merits of Discovery

Plaintiffs do not dispute that the Prices have "relevant" information for the purposes of Federal Rule of Civil Procedure 26(a)(1). Rather, they argue that the Prices have no non-privileged testimony to offer other than that directed toward their educational qualifications and authentication of documents (which is enough to technically authorize some discovery). [Dkt. No. 309 at 7.] Thus, they claim that the Court should deny the Motion to Compel.

In support of their Motion to Compel, Defendants argue that the Court should not consider any privilege claims in the abstract but should only consider them once the Court knows the specific questions that actually draw a privilege objection. [*See* Dkt. No. 314 at 3.]

Because Defendants' approach is consistent with the fact-sensitive and question-by-question nature of the privilege inquiry, *see White*, 950 F.2d at 430, the Court declines to prospectively carve out, essentially from whole cloth, the contours of the privilege in this case as Plaintiffs' approach would require. When and if the Court is called upon to resolve a specific privilege claim, it will do so. But not before.[3] Plaintiffs' dealings with the IRS, which gives rise to their damages here, are a legitimate source of inquiry in this case.

---

[3] Defendants also argue that merely maintaining this suit in the face of a failure-to-mitigate affirmative defense constitutes an implied waiver of all Plaintiffs' privilege claims about damages. [*See* Dkt. No. 297 at 10-11.] Because the Court is not deciding the scope of any privileges, it follows that it declines the invitation to find them waived. Addressing that argument—which on its face appears spectacular—will only be necessary if the Court later finds that a particular question calls for information covered by a privilege in the first place.

### 2. Using Interrogatories Instead

As indicated above, when ruling on a motion to compel, the Court must always ask whether any properly discoverable information "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. Pro. 26(b)(2)(C)(i). The Court determines that proceeding by interrogatory satisfies that standard. Plaintiffs are, or should be, the best sources from whom to learn what they did or did not do to mitigate their damages, what positions they authorized their counsel to take in tax litigation with the IRS, or why they decided to stop making additional premium payments. (At trial, the jury will expect them to testify to these matters if asked.)

Although Plaintiffs could claim lack of information during their depositions, that will not work in response to an interrogatory, if the information is actually available to them. *See Trane Co. v. Klutznick*, 87 F.R.D. 473, 476 (W.D. Wisc. 1980) ("[A] party [responding to an interrogatory] has a duty to provide all information available to him." (citation omitted)). Proceeding by interrogatory will also afford Defendants the opportunity to obtain whatever non-privileged information the Prices could have offered in their deposition—but in a way that should minimize any privilege problems. *See Hickman*, 329 U.S. at 505 ("A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney."); *Bd. of Ed. V. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 32 (N.D. Ill. 1984) ("It is settled law…that the work product concept furnishes no shield against discovery by interrogatories…of the facts that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence of documents, even though the documents themselves may not be subject to discovery." (quotation omitted)). To the extent that

privileges are asserted, the Court will have concrete questions to use to decide whether they call for truly privileged information.

### 3. Ms. Price as a "Key" Witness

The Court notes that Defendants describe Ms. Price as a "key" witness in this case. [Dkt. No. 297 at 1.] Such an argument gives the Court pause. While the Court is pleased with counsel's recent efforts to resolve the claims of several now former plaintiffs, the Court has made clear its intention to bring this over two-and-a-half year old case to conclusion. [*See* Dkt. No. 301 at 8 (denying Plaintiffs' motion to file a third-amended complaint at this "late state in the case").] If Ms. Price truly is a witness about disputed matters in this case, she cannot serve as trial counsel. Ind. R. Prof. Cond. 3.7(a).[4] Without knowing how Plaintiffs have divvied up the work in this complex case, turning Ms. Price into a witness runs the risk of further delaying the trial. Such a result—by way of understatement—would be less than ideal.

### CONCLUSION

Based upon the papers that the parties have submitted, the Court determines that the information that the Defendants seek can be more readily and inexpensively obtained via interrogatory. Thus, pursuant to Federal Rule of Civil Procedure 26(b)(2)(C)(i), the Court **DENIES** the Motion to Compel **WITHOUT PREJUDICE**. Defendants are given leave to serve up to six (6) interrogatories upon each Plaintiff concerning "Plaintiffs' failure to mitigate their tax-related damages, the Phillips Plaintiffs' failure to mitigate their damages by not making two additional premium payments, and the inconsistent position taken by the Whites Plaintiffs in their Tax Court cases." [Dkt. No. 314 at 1.] Defendants shall serve their additional

---

[4] Even if not trial counsel, Defendants could potentially deprive Plaintiffs of Ms. Price's assistance during the trial. *See* Fed. R. Evid. 615 (providing for the separation of most witnesses upon the request of a party).

interrogatories within **FIFTEEN DAYS**. Plaintiffs shall answer on or before **AUGUST 3, 2009**.[5] If, after receiving the interrogatory answers, Defendants remain unsatisfied, Defendants may re-file their Motion to Compel, directed toward the deficient interrogatory answers, and request leave to take the Prices' depositions.[6] The parties should be advised, however, that the Court believes that the interrogatory answers should suffice, if properly answered. Gamesmanship in answering the interrogatories, or feigning dissatisfaction with the answers, will be viewed with more disfavor than usual given the late stage of these proceedings.

Based upon the filings, it is unclear whether the Defendants have a complete copy of all the materials filed with or received from the Tax Court. If not, the Prices, as agents of the Whites, shall provide Defendants with copies of them within **FIVE DAYS**, except for materials (if any) that are subject to protective order in that court or that are claimed to be privileged, all of which shall be logged.

06/03/2009

_Jane Magnus-Stinson_
Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

---

[5] Because the IRS would not be allowed to depose the Prices in the pending tax litigation but could potentially obtain the transcripts of the Prices' depositions in this action, the Whites had additionally objected to the Motion to Compel on the grounds that the extra discovery would cause them unfair prejudice. [Dkt. No. 309 at 15.] Defendants offered to postpone any deposition until after the Whites' tax case goes to trial, which will be the week of July 27, 2009. [Dkt. No. 314 at 8-9.] Because the interrogatories will not be due until after the Whites' trial is over, the Whites should suffer no unfair prejudice in that litigation.

[6] Before requesting a deposition, counsel should again recall the stern warning issued in the *Cook* case: "the Court will be vigilant in utilizing all available sanctions provisions if, in retrospect, it is apparent that the deponent had so little relevant, non-privileged information that the [discovery] was no more than a waste of everyone's time." *Cook*. 2003 WL 23009047, at *2

**Distribution via ECF only:**

William Lane Arnold
DIAMOND McCARTHY LLP
larnold@diamondmccarthy.com

Vanessa Scorcia Herman
WALTERS BENDER STROHBEHN &
VAUGHAN, P.C.
vherman@wbsvlaw.com

David K. Herzog
BAKER & DANIELS - Indianapolis
david.herzog@bakerd.com

John Justin Johnston
WYRSCH HOBBS & MIRAKIAN, P.C.
jjohnston@whmlaw.net

R. Keith Johnston
WALTERS BENDER STROHBEHN &
VAUGHAN, PC
kjohnston@wbsvlaw.com

Matthew Davidson Lamkin
BAKER & DANIELS - Indianapolis
matthew.lamkin@bakerd.com

Brandon V. Lewis
DIAMOND MCCARTHY LLP
blewis@diamondmccarthy.com

Eric David Madden
DIAMOND MCCARTHY LLP
emadden@diamondmccarthy.com

Rachel B. Mahn
WALTERS BENDER STROHBEHN &
VAUGHAN, P.C.
rmahn@wbsvlaw.com

Lee B. McTurnan
BINGHAM MCHALE LLP
lmcturnan@binghammchale.com

Stepehen Girard Mirakian
WYRSCH HOBBS & MIRAKIAN, P.C.
smirakian@whmlaw.net

Kenneth J. Munson
BINGHAM MCHALE LLP
kmunson@binghammchale.com

Adria S. Price
PRICE & ASSOCIATES, LLC
adria@pricelaw.net

David M. Skeens
WALTERS BENDER STROHBEHN &
VAUGHAN
dskeens@wbsvlaw.com

Michael D. Strohbehn
WALTERS BENDER STROHBEHN &
VAUGHAN, P.C.
mstrohbehn@wbsvlaw.com

J. Michael Vaughan
WALTERS BENDER STROHBEHN &
VAUGHN, P.C.
mvaughan@wbsvlaw.com

Clifford H. Walston
DIAMOND MCCARTHY LLP
909 Fannin Street, Suite 1500
Houston, TX 77010

James Robert Wyrsch
WYRSCH HOBBS & MIRAKIAN, P.C.
jimwyrsch@whmlaw.net

Michael J. Yoder
DIAMOND MCCARTHY LLP
909 Fannin Street, Suite 1500
Houston, TX 77010